Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ASSOCIATED BUILDERS AND CONTRACTORS,
　　NEW MEXICO CHAPTER;

NORTHERN NEW MEXICO INDEPENDENT
　　ELECTRICAL CONTRACTORS;

NEW MEXICO ROOFING CONTRACTORS
　　ASSOCIATION;

NEW MEXICO CHAPTER AMERICAN FIRE SPRINKLER
　　ASSOCIATION;

NATIONAL UTILITY CONTRACTORS OF NEW MEXICO;

SHUMATE CONSTRUCTORS, INC.;

KAUFMAN FIRE PROTECTION SYSTEMS, INC.;

REID & ASSOCIATES, INC.;

MECHANICAL CONCEPTS LTD. CO.;

MICHAEL S. RICH CONTRACTORS, INC.;

NEW MEXICO METAL SYSTEMS, LLC;

TLC PLUMBING & UTILITY, INC.;

HIGHWAY SUPPLY, LLC;

PELLETIER CONSTRUCTION, INC.;

PLATINUM BUILDERS CORPORATION; and

SDV CONSTRUCTION, INC.,

　　　　　Plaintiffs,

vs.                                          Civil Action No. 1:09-cv-00546-WJ-RHS

STATE OF NEW MEXICO, ex rel.

1

Your complimentary use period has ended. Thank you for using PDF Complete.

Click Here to upgrade to Unlimited Pages and Expanded Features

Department of Workforce Solutions; Department
Of Workforce Solutions-Labor Relations Division;
BETTY SPARROW DORIS, in her official capacity;
FRANCIE CORDOVA, in her official capacity,

        Defendants.

DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION TO DISMISS

I.  <u>Plaintiffs' exhibit "2," attached to their response, should be excluded, stricken and not considered by the Court in ruling on Defendants' motion to dismiss.</u>

      Plaintiffs' exhibit "2" purports to be a table prepared by Public Service Research Foundation and is entitled "Employment and Union Membership in Construction Industry in New Mexico." It purports to reflect 8% union membership for 2008. The alleged "data source" is "Current Population Survey." This document is wholly immaterial, irrelevant, misleading, is without any authentication, and discloses nothing about the alleged data source or how that data was collected, manipulated and sorted for purposes of creating the table. The "population" purportedly "surveyed" is not disclosed. Whether that "population" represents workers employed in one or more construction trades, if at all, is not disclosed. How that "population" may have been surveyed and by what method is not disclosed.

      Remarkable, also, is the fact, apparent on its face, that the document depicts <u>nothing</u> about union membership among those workers who work on New Mexico's public works projects. And, it depicts <u>nothing</u> about union membership among those workers who work on New Mexico's public works projects in the different classifications of construction work,

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

whether type "B" projects for buildings or type "A" projects for highways, which entail different prevailing wage rate determinations.[1]

In short, exhibit "2" wholly fails to satisfy the evidentiary rules for relevance and authentication and is irrelevant, confusing and misleading. It is inadmissible under the federal rules of evidence, Fed. R. Civ. P. 402, 403 and 901, should be stricken and not be considered by the Court in ruling on Defendants' motion to dismiss made pursuant to Fed. R. Civ. P. 12 (b).

II. <u>Plaintiffs allege no "injury" resulting from Chapter 206</u>.

Plaintiffs allege no monetary loss, and make no argument regarding any monetary loss, resulting from the challenged provisions of Chapter 206's amendments to New Mexico Public Works Minimum Wage Act (PWMWA), NMSA 1978, Sections 13-4-10 to -17 (1963, as amended through 2009 N.M. Laws, Ch. 206). The reason is evident--there is none. Plaintiffs merely bid on contracts and are paid whatever they bid, assuming they are selected as the contractors on public works jobs. Government is the payor of the workers' wages, because it pays the contractors, who, in turn, pay the workers their required wages under the PWMWA. All prospective bidders know the wage decision for a particular project that is let to bid and know the associated minimum wage rates required for their workers under the PWMWA.

To illustrate how the process works: Roswell Independent School District decides to build an elementary school building. Before letting the project to bid, Roswell Schools must ask the Director of the Labor Relations Division of the Department of Workforce Solutions for a

---

[1] Under the current regulations, separate wage rate surveys are prepared for each of the different construction classifications, type "A," type "B," type "H," and type "C," and wage determinations are issued on the basis of those surveys. <u>See</u> Rule 11.1.2.11 (C)(1) NMAC. For projects that involve more than one classification of construction, the director issues predeterminations, including the appropriate wage rates, for each classification of construction where none of the classifications comprises 80% of the total contract cost. Where one classification comprises 80% of more of the total contract cost, the predetermined rate for that classification is used for the entire contract. <u>See</u> Rule 11.1.2.9 (C).

Your complimentary use period has ended. Thank you for using PDF Complete.

Click Here to upgrade to Unlimited Pages and Expanded Features

wage rate decision for its proposed project. See Rule 11.1.2.10 (B) NMAC. A form is provided for that purpose.[2] The form asks for an estimate of cost for each of the several classifications of construction. In the case of a school building, the cost of type "B" construction work might well equal or exceed 80% of total cost, which would entitle that project to a "B" wage rate decision. See Rule 11.1.2.9 (C) NMAC.

"Wage rate decisions must be incorporated in the advertised specifications for every contract subject to the Public Works Minimum Wage Act." See Rule 11.1.2.10 (C)(1). The required public works wage rates associated with a particular wage decision are easily obtainable by any contractor wishing to bid. Such potential contractor need only go to the public works wage rates that the Department of Workforce Solutions posts on its web pages.[3] Thus, the wage decision that the Director issues, and which is included in the advertised specifications for a public works project that is let to bid, informs a contractor of the wage rates required for the project, and enables that contractor to bid an amount sufficient to enable that contractor to pay the minimum wages to his workers that the PWMWA requires that he pay.[4]

Every contractor is treated the same. It does not matter whether the contractor-bidder is union or non-union. All bidders have the same information--the wage decision and the required minimum wage rates they must each pay in order to comply with the PWMWA.

---

[2] See http://www.dws.state.nm.us/wagerate.html

[3] See http://www.dws.state.nm.us/pdf/PW2009Rates or http://www.dws.state.nm.us/dws-pubwage.html for the public works wage rates for the several classifications of construction, types "A," "B," "C," and "H."

[4] Every public works contract must contain a provision requiring the contractor to pay workers wages not less than amounts computed at the wage rates and fringe benefit rates determined by the Director to be the prevailing wage rates and prevailing fringe benefit rates issued for the project. See NMSA 1978, Section 13-4-11 (A).

Your complimentary use period has ended. Thank you for using PDF Complete.

Click Here to upgrade to Unlimited Pages and Expanded Features

Although Plaintiff contractors are not injured monetarily by Chapter 206, their real grievance, it seems, is depicted at page 17 of their response, namely, union contractors can now be more competitive with non-union contractors. In other words, Chapter 206 has "leveled the playing field," because all contractors, union and non-union, have an equal chance in the public works arena of competitive bidding and competitive procurement.

In almost every discussion of "fairness" in competitive procurement, especially in the governmental arena, one would assume that "leveling the playing field" would be regarded as laudatory, not prohibitory. And it certainly amounts to no constitutional infirmity and constitutes no cognizable injury to those preferring a law providing a more preferential playing field for them.

As the United States Supreme Court correctly opined in 1903: "[I]t belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities." <u>Atkin v. State of Kansas</u>, 191 U.S. 207, 222-23 (1903) (rejecting a constitutional challenge to a Kansas statute prescribing the length of day for workers of contractors performing public works projects for Kansas and its counties and municipalities; also rejecting a claim of denial of equal protection, because the rule of conduct prescribed by the Kansas statute applies to all who contract to do work on behalf either of the state or its municipal subdivisions, and alike to all employed to perform labor on such work). <u>Id</u>. at 224.

This common-sense viewpoint of <u>Atkin</u> regarding Government's constitutional authority to set beneficial working conditions for workers employed on its public works projects was reinforced by the United States Supreme Court in <u>Perkins v. Luken Steel Co.</u>, 310 U.S. 113

5

(1940), in upholding Government's right to fix the conditions when purchasing products from sellers, requiring that sellers abide by prevailing minimum wage determinations for their employees made by the Secretary of Labor. As <u>Perkins</u> stated: "Government enjoys the unrestricted power … to fix the terms and conditions upon which it will make needed purchases… . The Act's purpose was to impose obligations upon those favored with Government business and to obviate the possibility that any part of our tremendous national expenditure would go to forces tending to depress wages … and offending fair social standards of employment…" <u>Id</u>. at 877.

Although Plaintiffs invite this Court, at page 18 of their response, to exercise its "expertise to determine that use of CBA wage rates are inappropriate to set prevailing wage rates for public works projects in New Mexico," it is not the task of this Court to determine whether Chapter 206's methodology by which the Director determines prevailing wage rates is "appropriate" or "inappropriate," because that is a policy decision for the New Mexico Legislature. Contrary to <u>Atkin</u>'s admonition, Plaintiffs ask this Court to "abandon the sphere" assigned to the judiciary and "enter the domain of legislation and, upon grounds merely of justice or reason or wisdom, annul statutes that ha[ve] received the sanction of the people's representatives." <u>Id</u>. at 223.

Consistent with its obligation to determine "fair social standards of employment," the New Mexico Legislature has the power, which it has exercised by Chapter 206, to oblige those favored with Government business to adhere to minimum wage standards for paying workers employed on the State's public works projects, by legislatively determining the methodology by which the Director is to determine the prevailing wage rates.

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

Plaintiffs quarrel with the Legislature's determination that the Director shall use collective bargaining agreements in establishing the prevailing wage, complaining, at pages 10-11 of their response, that while other States' prevailing wage laws use collective bargaining agreements, they do it differently. Plaintiffs' quarrel only serves to make obvious the fact that a State's chosen methodology to establish the prevailing wage rate for its public works projects is a considered policy decision for that State's legislature. It is not a policy decision for the federal courts. See, e.g., Dandridge v. Williams, 397 U.S. 471, 486 (1970) ("[T]he Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy").

Plaintiffs rely, in argument at page 12, upon Beary Landscaping, Inc. v. Shannon, No. 05-C 5697 (D. Ill. 2008) (memorandum opinion and order attached as exhibit "1" to response)[5] for the proposition that the money that Plaintiffs have already earned on existing contracts constitutes a valid property interest, thus entitling them to claim "standing." Beary is inapt. The first sentence on the second page of the opinion so demonstrates: "Plaintiffs seek to enjoin IDOL's application of the IPWA as it relates to the landscaping contracts they perform in the [named] Illinois counties."

Plaintiffs' lawsuit in the case at bar does not involve existing contracts that they are performing. The wage rates to be implemented under Chapter 206 would apply to future contracts, not existing contracts. Plaintiffs do not, in their complaint, allege any impairment of contract rights or that Chapter 206's wages rates, when they are set by the Director pursuant to Chapter 206, would apply, retroactively, to public works contracts that have previously been let

---

[5] The cited opinion is not precedential. Nor does it have persuasive value. See 10th Cir. R. 32.1 (A).

7

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

to bid and entered into under the prevailing wage rates established by the Director under former law.

Plaintiffs have suffered no "injury." Chapter 206 does not invade any "legally protected interest" of Plaintiffs. Plaintiffs lack standing to maintain their action. Accordingly, the Court lacks subject matter jurisdiction of Plaintiff's complaint.

III. <u>Plaintiffs have failed to exhaust administrative remedies</u>.

Plaintiffs dwell upon a misconception about Chapter 206. Chapter 206 does not delegate to unions or to any other private party the authority to establish the prevailing wage rates. Under Chapter 206, the <u>Director</u> of the Labor Relations Division, a public official, makes the determination of prevailing wage rates--not private parties. That official determination is guided by standards that the Legislature has supplied. Chapter 206 amends Section 13-4-11 to add, in part, at subsection B: "<u>The director</u> [of the labor relations division of the workforce solutions department] <u>shall determine prevailing wage rates and prevailing fringe benefit rates</u> for respective classes of laborers and mechanics employed on public works projects…" (Emphasis added).

As is its constitutional prerogative, the Legislature has determined that collective bargaining agreements shall be used by the Director, with the provisos, at paragraphs 2 and 3 of subsection B that: "[T]he director shall give <u>due regard to information obtained during the director's determination</u> of the prevailing wage rates" and "<u>any interested person shall have the right to submit to the director written data, personal opinions and arguments</u> supporting changes to the prevailing wage rate." (Emphasis added).

8

Your complimentary use period has ended. Thank you for using PDF Complete.
Click Here to upgrade to Unlimited Pages and Expanded Features

The administrative forum, not federal court, is the forum in which Plaintiffs should litigate issues about the prevailing wage rates to be established under Chapter 206.  They may present any competent evidence they wish in support of their views about the proper prevailing wage that the Director should establish.  And, if they are not satisfied that the Director has given "due regard" to the information that they may provide, they may litigate the question of the proper prevailing wage rate in accordance with the administrative remedies that state law provides, which include state court judicial review.  See  Section 13-4-15 (A): "Any interested person may appeal any determination, finding or action of the director made pursuant to the Public Works Minimum Wage Act to the labor and industrial commission sitting as the appeals board… ."[6]  If dissatisfied with the ruling of the Labor and Industrial Commission, Plaintiff appellants might further appeal to the district court.  See  Section 13-4-15 (D).  Rule 1-074 NMRA governs appellate review in state district court and permits an appellant to petition for a stay.

Also, the Director's anticipated adoption, after hearing, of new rules to implement Chapter 206, as required by Section 13-4-11 (E), might also be appealed by Plaintiffs to the Labor and Industrial Commission and thereafter to state district court in accordance with these same appellate procedures.  See  Rule 11.1.2.15 NMAC.

As a general principle, "the doctrine of ripeness prevents federal courts from interfering with the actions of administrative agencies except when  a specific 'final agency action' has an actual or immediately threatened effect.'"  Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 241 (10th Cir. 1991) (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 110 S. Ct. 3177, 3191,

---

[6] See also Rule 11.1.2.11 (C) NMAC:  "A wage determination based upon a new survey shall not go into effect pending a final disposition of any appeal to the labor and industrial commission, sitting as the appeals board."

9

111 L. Ed.2d 695 (1990)). Implicitly, exhaustion of administrative remedies, which has not occurred here, is a prerequisite to seeking judicial relief of this Court. See <u>Held v. Manufacturers Hanover Leasing Corp</u>., 912 F.2d 1197, 1206 (10th Cir. 1990).

In response to Defendant's exhaustion argument, Plaintiffs argue, at page 5, that they may by-pass the Labor and Industrial Commission, because the Plaintiffs assert so-called constitutional infirmities of Chapter 206, which the Commission is ill-suited to address, and the Commission members are political appointees of the Governor, who signed the legislation. Plaintiffs are incorrect for these reasons:  First, the Commissioners are, by statute, a neutral body. It is composed of three members, one representing employees, one representing employers and a third, appointed by the other two, who represents neither. See NMSA 1978, Section 50-1-1 (1979). Second, Plaintiffs may not by-pass the <u>Director</u>, who has yet to establish prevailing wage rates under Chapter 206 and to adopt rules. Third, Plaintiffs are not entitled to ignore and disregard their appellate remedies. Nor are Plaintiffs excused of the necessity, as with any litigant, of preserving their claims in the administrative forum by making and presenting such arguments and evidence as they deem necessary. Any properly preserved claim, constitutional or otherwise, may be raised by Plaintiffs in state-court judicial review of administrative proceedings.

Plaintiffs have failed to exhaust administrative remedies. Their complaint is not ripe. Accordingly, the Court lacks subject matter jurisdiction of Plaintiff's complaint.

IV. <u>Defendants are immune under the Eleventh Amendment</u>.

Plaintiffs argue, at page 7 of their response, that, under the <u>Ex parte Young</u> doctrine, Defendants are not immune under the Eleventh Amendment, because their suit seeks prospective

Your complimentary use period has ended. Thank you for using PDF Complete.

Click Here to upgrade to Unlimited Pages and Expanded Features

injunctive relief, not damages. "In determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" <u>Verizon Md. Inc. v. Public Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002) (quoting <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 296 (1997)). An allegation of an "ongoing violation" of federal law is absent from Plaintiffs' complaint.

    First, Plaintiffs do not plead a federal law violation. All contractors who wish to bid on the State's public works projects may do so under the same terms and conditions that the Legislature has established. Additionally, Plaintiffs have not demonstrated that Chapter 206 is impermissibly vague in all of its applications.

    Second, even if a federal law violation had been pled, an "ongoing violation" is not alleged. Defendants have not yet established a prevailing wage rate under Chapter 206 nor adopted implementing rules under Chapter 206.

    Moreover, under <u>Coeur d'Alene</u>, if a plaintiff's suit "implicates special sovereignty interests," the <u>Young</u> fiction may not be used to overcome the Eleventh Amendment bar. <u>Coeur d'Alene</u>, at 281. In the case at bar, "special sovereignty issues" of New Mexico are present, specifically, the unquestioned, established constitutional power and prerogative of New Mexico to build its public works projects that it owns under the terms and conditions that New Mexico's Legislature provides by its laws.

V. <u>Plaintiffs' complaint, in its entirety, fails to state a claim upon which relief can be granted</u>.

    The PWMWA, as amended by Chapter 206, treats all contractors alike. With respect to public works projects, all contractors and their workers are subject to the same terms and

conditions that the Legislature has established. All interested persons have the ability to participate in the wage determination process by submitting to the Director written data, opinions and arguments regarding prevailing wage rate determinations. The PWMWA, as amended by Chapter 206, bears a rational relationship to a legitimate State interest and does not deny Equal Protection or Due Process.

Defendants respectfully pray that Plaintiffs' complaint be dismissed and for such further relief as the Court deems just and proper.

Respectfully submitted,

GARY K. KING
Attorney General

_____
MELANIE CARVER
Assistant Attorney General
111 Lomas Blvd. NW Ste 300
Albuquerque, NM 87102
(505) 222-9092
mcarver@nmag.gov

_____
ANDREA R. BUZZARD
Assistant Attorney General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6039
abuzzard@nmag.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2009, I filed the foregoing electronically through the CM/ECF system which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Wayne E. Bingham, Esq.
wbingham@binghamhurst.com
Plaintiffs' attorney

Your complimentary use period has ended. Thank you for using PDF Complete.

Click Here to upgrade to Unlimited Pages and Expanded Features

| | |
|---|---|
| | ENDANTS REPLY BRIEF 101909 |
| | y Documents\LID\ABC-SB33 |
| Template: | C:\Documents and Settings\mcarver\Application Data\Microsoft\Templates\Normal.dot |
| Title: | IN THE UNITED STATES DISTRICT COURT |
| Subject: | |
| Author: | Andrea Buzzard |
| Keywords: | |
| Comments: | |
| Creation Date: | 10/16/2009 4:39:00 PM |
| Change Number: | 3 |
| Last Saved On: | 10/19/2009 9:05:00 AM |
| Last Saved By: | Andrea Buzzard |
| Total Editing Time: | 39 Minutes |
| Last Printed On: | 10/19/2009 11:59:00 AM |

As of Last Complete Printing
    Number of Pages: 12
    Number of Words:    2,975 (approx.)
    Number of Characters:    16,958 (approx.)