IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NEW MEXICO ASSOCIATED
BUILDERS AND CONTRACTORS,
et al.,

    Plaintiffs,

v.                                                                                                           No. 1:09-CV-546 WJ/ACT

DEPARTMENT OF WORKFORCE
SOLUTIONS-LABOR RELATIONS
DIVISION, BETTY SPARROW
DORIS, AND FRANCIE CORDOVA,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss, filed August 3, 2009 (Doc. 15). In this case, various New Mexico contractors and associations of contractors ("Plaintiffs") have sued the New Mexico Department of Workforce Solutions, Betty Sparrow Doris, in her official capacity as Secretary of Workforce Solutions, and Francie Cordova, in her official capacity as Director of the Labor Relations Division of the Department of Workforce Solutions ("Defendants"). Plaintiffs seek a declaratory judgment that the 2009 amendment to the Public Works Minimum Wage Act, N.M. STAT. § 13-4-10.1, -11, is null and void because it violates their constitutional rights to due process and equal protection, violates New Mexico public policy, and violates the New Mexico Legislature's public policy and practice. Having considered the Complaint, the parties' legal memoranda, and the applicable law,

I find that Plaintiffs have not carried their burden of showing imminent injury to a legally protected interest. Therefore, they lack standing to sue, and Defendants' motion is GRANTED.

## BACKGROUND

In 2009, the New Mexico Legislature passed and Governor Richardson signed a bill amending the state's Public Works Minimum Wage Act ("PWMWA"), effective July 1, 2009. *See* 2009 N.M. Laws Ch. 206; Doc. 1 ¶ 15. The PWMWA applies to every state government contract in excess of $60,000 for the construction, alteration, demolition, or repair of public buildings, works, or roads that involved the employment of mechanics or laborers. N.M. STAT. § 13-4-11. Applicable public works contracts must contain a provision requiring that the government contractors pay the mechanics and laborers a minimum wage. *Id.*

The 2009 amendment changed how the state calculates that minimum wage. Modeled on the federal Davis-Bacon Act, the old PWMWA calculated the minimum wage based on "the prevailing wage for similar work in the same locale." *Mem'l Med. Ctr. v. Tatsch Const., Inc.*, 129 N.M. 677, 685 (2000). To determine the prevailing wage for similar work in a locale, the director of the Labor and Industrial Division of the Labor Department (now the Labor Relations Division of the Department of Workforce Solutions) compiled wage information including voluntary submissions of wage data by "contractors, contractors' associations, labor organizations, interested persons and public officers." 2005 N.M. Laws Ch. 253, § 1(B). The director was required to "give due regard" to this data, and "any interested person" had the right to submit "written data, views and arguments why the wage determination should be

2

changed." *Id*.

The new PWMWA bases the prevailing wage on "the same wage rates . . . used in collective bargaining agreements . . . that govern predominantly similar classes or classifications of laborers and mechanics for the locality of the public works project and the crafts involved." N.M. STAT. § 13-4-11(B). If the director cannot "reasonably and fairly determine" the prevailing wage rates in a locality "because no collective bargaining agreements exist," the director will determine the prevailing wage based on the most similar class of laborers "in the nearest and most similar locality in which collective bargaining agreements exist." *Id*. § 13-4-11(B)(1). The new PWMWA bases the prevailing wage almost entirely on comparable collective bargaining agreements ("CBA"), without any reference to the voluntary submission of wage data from several union and non-union sources. Nonetheless, the PWMWA still gives "any interested person" the right to submit "written data, personal opinions and arguments supporting changes to the prevailing wage rate." *Id*. § 13-4-11(B)(3). Also, the director is still required to "give due regard to information obtained during the director's determination of the prevailing wage rates . . . made pursuant to this subsection." *Id*. § 13-4-11(B)(2).

Plaintiffs' suit chiefly arises from the change in the minimum wage calculation from the consideration of non-union wage data to nearly exclusive consideration of CBA wage data. Plaintiffs base three counts on this change: Count I, which alleges that the improper delegation to private parties (the parties to CBAs) violates the due process clauses of the U.S. Constitution and the New Mexico Constitution, Doc. 1 at 5-7; Count III, which alleges that the PWMWA's exclusion of non-union contractors from participating in the prevailing wage determination denies them equal protection,

presumably under both the U.S. Constitution and New Mexico Constitution, *id.* at 9-11; and Count IV, which alleges that the amendment violates New Mexico's public policy, which prefers the most economical use of public resources, *id.* at 11-13.  Count II alleges that parts of § 13-4-11 and the PWMWA's new definition section, located at § 13-4-10.1, are so vague as to deny Plaintiffs their due process rights.  Doc. 1. at 7-8.  Count V alleges that the PWMWA amendment process violated the Legislature's own "public policy and practice" of referring bills with a fiscal impact to certain committees.  *Id.* at 13-14.  For remedies, Plaintiffs seek a declaration that the amended PWMWA is unconstitutional and therefore null and void, an injunction preventing Defendants from enforcing the amended PWMWA, and an award of costs and attorneys' fees.

## DISCUSSION

The Court must first examine Plaintiffs' standing to challenge the PWMWA.  The constitutional doctrine of standing is rooted in Article III's extension of the federal judicial power to "cases" and "controversies," which the Supreme Court has interpreted as limiting jurisdiction to "redress[ing] or prevent[ing] actual or imminently threatened injury to persons caused by private or official violation of law.  Except when necessary in the execution of that function, courts have no charter to review and revise legislative and executive action."  *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149 (2009).  Standing "reflect[s] this fundamental limitation."  *Id.*  To establish standing, Plaintiffs bear the burden of showing that they are "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant;

and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.*; *see also Chamber of Commerce of U.S. v. Edmondson*, — F.3d —, 2010 WL 354353, at *5 (10th Cir. Feb. 2, 2010). "General factual allegations of injury resulting from defendant's conduct may suffice," at the motion-to-dismiss stage because we may "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Standing exists to prevent injury to "a legally protected interest." *Id.* at 560. The Tenth circuit has broadly defined "legally protected interest" to mean any "judicially cognizable interest" for purposes of standing. *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006). That is, "the sort of interest that courts think to be of sufficient moment to justify judicial intervention." *Id.* Although Plaintiffs do not allege an economic injury, that does not destroy standing because "standing may be predicated on noneconomic injury." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982).

In conclusory fashion, Plaintiffs allege that they have standing because, as non-union contractors and associations of non-union contractors, they will suffer a direct injury from "having unions and union contractors set prevailing wage rates on which they have no input and cannot participate." Doc. 27 at 4. However, Plaintiffs' alleged interest is far afield from the interests in government contracts that courts have recognized. The Supreme Court's decision in *Perkins v. Lukens Steel Co.*, 310 U.S. 113 (1940), significantly colors this inquiry. In *Lukens Steel*, the Court denied standing to prospective bidders for federal contracts who challenged the Secretary of Labor's

"prevailing wage" determination under the Public Contracts Act. *Id*. at 116, 120-21, 129. The bidders could not show that the wage determination invaded any legal right: "Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Id*. at 127. Granted, some aspects of *Lukens Steel* are significantly different from this case: it concerned a statutory challenge of administrative rulemaking, rather than a constitutional challenge of a statute, and a federal statute that did not rely on union CBA wage rates. Nonetheless, *Lukens Steel* provides some applicable principles: that the government is free, like any other contracting party, to set the terms and conditions by which it buys goods and services; and that a prospective bidder may not have a legal interest to challenge how the government sets wages in its public works contracts.

These general principles do not mean that the government enjoys an absolute right to set the terms and conditions of its public works contracts. With the Administrative Procedures Act (APA), Congress created an exception to this general rule and accorded standing to disappointed bidders. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 293 (6th Cir. 2006) ("[U]nless a party brings suit under the APA or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, this Court will not confer standing upon disappointed bidders.").[1] Since *Lukens Steel*, courts have recognized the

---

[1] Some circuits (not including ours) have treated the APA as eroding *Lukens Steel*. *See Club Italia Soccer*, 470 F.3d at 293 (citing *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 722-23 (2nd Cir. 1983); *Airco, Inc. v. Energy Research & Dev.*
(continued...)

standing of bidders to sue based on the economic interest in winning the contract at stake.  *See, e.g.*, *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (contractor has standing to challenge a minority preference contract scheme on equal protection grounds if it "can show that it was 'able and ready to bid' on a contract subject to the ordinance"); *Club Italia Soccer*, 470 F.3d at 295 (prospective bidder has standing to raise an equal protection challenge against a rushed bidding process that did not allow enough time to submit its proposal); *Image Carrier Corp. v. Beame*, 567 F.2d 1197, 1200-01 (2nd Cir. 1977) (prospective bidders had standing to challenge New York City resolution restricting bidding for certain printing work to union plants that pay prevailing wages).  Clearly, disappointed or prospective bidders have a sufficient legal interest in the contract at stake to challenge the lawfulness of a specific bid process or award.

Plaintiffs, however, are not suing as bidders—either disappointed or prospective—for any specific government contract.  Rather, they vaguely assert a general interest in all their government contracts.  *See* Doc. 1 at 4 ("Plaintiff contractors have a legitimate property interest in the contracts they enter into with public owners for construction work governed by the Public Works Minimum Wage Act"); Doc. 27 at 12 ("The Complaint in the instant case alleges that Plaintiff

---

[1](...continued)
*Admin.*, 528 F.2d 1294, 1296 (7th Cir. 1975); *Armstrong & Armstrong, Inc. v. United States*, 514 F.2d 402, 405 (9th Cir. 1975); *Merriam v. Kunzig*, 476 F.2d 1233, 1242 (3d Cir. 1973); *William F. Wilke, Inc. v. Dep't of Army of U.S.*, 485 F.2d 180, 182-83 (4th Cir. 1973); *Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 865-67 (D.C. Cir. 1970)).  Each of those decisions extended standing only to disappointed bidders on federal contracts, not to public works contractors on state projects alleging an injury of not being consulted for the prevailing wage determination.

contractors perform (currently) public works projects. They are paid public monies for building such projects."). Plaintiffs do not allege that the PWMWA will impact any existing contracts, but only that they currently *perform* public works contracts. Doc. 27 at 12. If PWMWA affected Plaintiffs' property interest in their current contracts, then standing may exist. *See, e.g.*, *Beary Landscaping, Inc. v. Ludwig*, 479 F. Supp. 2d 857, 866 (N.D. Ill. 2007) (state's prevailing wage decisions create standing because they "implicate the Plaintiffs' ability to retain money on state and/or municipal contracts that already have been completed by the Plaintiff companies or Plaintiff owners"). Plaintiffs have not alleged that the wages set under § 13-4-11 retroactively apply to existing contracts. In fact, the law seems to apply only to future contracts because "[e]very contract or project . . . *shall* contain a provision stating the minimum wages . . ., which *shall* be based upon the wages and benefits that will be determined by the director to be prevailing." N.M. STAT. § 13-4-11 (emphasis added).

   Plaintiffs have not carried their burden of showing that their suit seeks to vindicate an injury of a legally protected interest. Their complaint never connects the alleged unlawfulness to any particularized legal interest. Count I (due process) does not state that the alleged due process violation causes any injury. Doc. 1 at 5-6. Count II (due process: vague and ambiguous) vaguely alleges that "the Act is so vague, indefinite and uncertain as to deny Plaintiffs their due process" without a link to any injury. Doc. 1 at 8. Count III (equal protection) alleges that Plaintiffs cannot "participate in setting prevailing wage rates" without connecting that injury to any contract. Doc. 1 at 10. Counts IV and V (violation of public policy and contrary to legislative process, respectively) allege public policy violations that can only be

construed as generalized grievances unrelated to a particularized injury or legal interest. Plaintiffs' response to the motion to dismiss does not remedy this omission: they simplistically assert that the PWMWA "does invade Plaintiff contractors' legally protected interests of due process and equal protection which Defendants seek to deny by their unconstitutional Act and the future enforcement of same." Doc. 27 at 13.

The PWMWA does not harm any existing contract. Plaintiffs' suit is not based on any injury in not receiving a past contract or any injury stemming from a future bidding process. Their alleged interest in being consulted for the calculation of the prevailing minimum wage is not "of sufficient moment to justify judicial intervention." *In re Special Grand Jury 89-2*, 450 F.3d at 1172. *Lukens Steel* still controls under these circumstances, because the APA and its exception to *Lukens Steel* does not apply to state agencies. 5 U.S.C. § 701(b)(1)(C); *Johnson v. Rodriguez*, 943 F.2d 104, 109 n.5 (1st Cir. 1991) (observing that the APA "does not purport to affect the review processes of state agencies or commissions). Based on the Plaintiffs' allegations, the PWMWA has not changed their ability to bid on and compete for state contracts on equal footing with other contractors. Whether they choose to do so now that New Mexico requires a different wage calculation is up to them. Otherwise, this Court has "no charter to review and revise legislative and executive action." *Summers*, 129 S. Ct. at 1149.

Additionally, Plaintiffs' alleged injury is conjectural. As noted above, the amended PWMWA provides that the director of the Labor Relations Division "shall give due regard to information obtained during the director's determination of the prevailing wage rates," N.M. STAT. § 13-4-11(B)(2), which presumably includes the "written data, personal opinions and arguments supporting changes to the prevailing

9

wage rate" mentioned in the next subsection, *id*. § 13-4-11(B)(3). Unless and until the director refuses to consult information submitted by Plaintiffs, as the statute seems to require, any injury from lack of consultation is hypothetical.

## CONCLUSION

Upon thorough review of Plaintiffs' Complaint (Doc. 1), Defendants' Motion to Dismiss (Doc. 15), Plaintiffs' Response (Doc. 27), Defendants' Reply (Doc. 29), and Plaintiffs' Surreply (Doc. 37), the Court finds that Plaintiffs have failed to show imminent injury to a legally protected interest. Accordingly, they lack standing to bring this suit.

**THEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss is GRANTED and that the above-captioned case is hereby DISMISSED WITHOUT PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE